ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2008 JAN 16 AM 11:09
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| SAMMIE L. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 107-120 |
| | ) |
| COLUMBIA COUNTY DETENTION | ) |
| CENTER MEDICAL DEPARTMENT; | ) |
| GARY WARRENT; CAROL ANN; DR. | ) |
| ANDREWS; and MEDICAL STAFF, | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at the Columbia County Detention Center ("CCDC") in Appling, Georgia, filed the above captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because Plaintiff's complaint was filed IFP, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

## I. SCREENING THE COMPLAINT

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) the CCDC Medical Department; (2) FNU Andrews, a doctor at the CCDC; (3) Gary Warrent; a nurse (4) Carol Ann, a nurse; and (5) the Medical Staff. (Doc. no. 1, pp. 1, 4). Plaintiff alleges generally that these Defendants denied him medical treatment. (Doc. no. 1).

Plaintiff arrived at the CCDC on December 19, 2006. (Id. at 5). According to Plaintiff, two days after his arrival at the CCDC, he had his initial medical evaluation. (Id.). Plaintiff maintains that, during this evaluation, he expressed a specific need for medical attention concerning an unspecified injury and his heart. (Id.). Even though Plaintiff notified Defendants of his medical needs, Plaintiff contends, "[N]othing was done on that day." (Id.). On January 11, 2007, Plaintiff submitted a sick call slip requesting medical attention. (Id.). This request was answered the next day, by Nurse Ann, who responded to Plaintiff's request by allegedly stating, "I told you we don't do necks." (Id.).

Six days later, Plaintiff described his medical problems to Doctor Andrews and Nurse Warrent during another medical visit. (Id.). In his complaint, Plaintiff does not explain the "problem," describe his alleged injury, or make any allegations against Nurse Warrent concerning this medical visit. However, Plaintiff contends that Doctor Andrews merely replied, "Chiropractors are only out to get [Plaintiff's] money[, and] they're quacks," and then he failed to examine Plaintiff or prescribe him an X-ray. (Id.). Plaintiff asserts that, as

2

a result of this lack of medical attention, he has "periodic episodes of pain and stiffness." (Id.). Furthermore, Plaintiff contends that, as a result of the lack of medical treatment, his unspecified injury is getting worse. (Id.).

Next, Plaintiff takes issue with the medical treatment, or lack thereof, that he received regarding his feet. (Id.). Specifically, Plaintiff alleges that, on March 24, 2007, he submitted a sick call slip request stating that he needed medical attention concerning the corns on his feet. (Id.). Four days later, Nurse Ann allegedly informed Plaintiff that "nothing could be done about [his] feet problems." (Id.). As a result of the lack of medical attention, Plaintiff asserts that the corns grew and became very painful to the touch, so painful in fact, that Plaintiff had to remove the corns himself, using the eraser end of a pencil. (Id. at 5, 6).

Finally, Plaintiff is also dissatisfied with the medical attention concerning his eyes. (Id. at 6). On March 15, 2007, Plaintiff requested an eye exam because his vision was blurry, and he had been getting headaches. (Id.). Plaintiff was examined by Nurse Ann, who then informed Plaintiff that he had to be incarcerated at the CCDC for one year before he would be provided with an eye exam. (Id.). Plaintiff contends that, because he does not have proper eye wear, he has blurred vision at times, headaches, and his eyes are getting worse. (Id.). Plaintiff seeks injunctive and monetary relief. (Id.).

## II. DISCUSSION

### A. The CCDC Medical Department

While Plaintiff names the CCDC Medical Department as a Defendant, he does not assert any allegations of wrong doing regarding this Defendant, as an entity, in his statement of claims. In fact, Plaintiff does not mention the CCDC Medical Department anywhere in

3

his statement of claims. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). In the absence of an allegation of any such connection between any actions of the entity of the CCDC Medical Department with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this Defendant. On that basis alone, the CCDC Medical Department could be dismissed. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury").

However, even if the CCDC Medical Department had specifically been mentioned as the individually-named Defendants' supervisor and/or employer, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Moreover, employers, like supervisory officials, cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp. 2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that an employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation or (2)

4

there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff has not alleged that any actions taken by the entity of the CCDC Medical Department give rise to this lawsuit. Rather, Plaintiff merely lists the CCDC Medical Department as a Defendant in the caption of his complaint. In other words, Plaintiff fails to make sufficient allegations to satisfy the first prong of supervisory liability.

Similarly, Plaintiff fails to allege a "causal connection" between the CCDC Medical Department and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[1] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from

---

[1] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be <u>obvious, flagrant, rampant and of continued duration</u>, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). Plaintiff has not made allegations of "widespread abuse."

5

doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has alleged neither with respect to the CCDC Medical Department. Accordingly, Plaintiff's claims against the CCDC Medical Department should be dismissed.

**B.    The Medical Staff and Nurse Warrent**

Although Plaintiff also names the Medical Staff and Nurse Warrent as Defendants, Plaintiff fails to mention these Defendants anywhere in his statement of claim. As noted above, § 1983 requires a connection between the actions taken by a particular person under color of state law and the constitutional deprivation. See LaMarca, 995 F.2d at 1538, see also Crawford-El, 523 U.S. at 598 (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). Therefore, Plaintiff has failed to state a claim upon which relief may be granted against the Medical Staff and Nurse Warrent. Accordingly, Plaintiff's claims against the Medical Staff and Nurse Warrent should be dismissed.[2]

---

[2] Indeed it may be that Plaintiff only mentions the entities of the CCDC Medical Department and the Medical Staff as descriptions of where the individually-named Defendants work. However, to the extent Plaintiff was attempting to sue the CCDC, his claim would also fail. According to Fed. R. Civ. P. 17(b), the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held. . . ." Accordingly, in this case, Georgia law controls. The Georgia Supreme Court has explained that: "[i]n every suit there must be a legal entity as the real plaintiff and the real defendant. This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Georgia Insurers Insolvency Pool v. Elbert County, 258 Ga. 317, 368 S.E.2d 500, 502 (1988) (quotation omitted). The Court is not aware of any applicable precedent for recognizing a jail as an entity capable of being sued. However, in a similar vein, the Court is aware that the Eleventh Circuit has ruled that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit. . . ." Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (dismissing claim against sheriff's department because department was not subject to suit under Alabama law); see also Bunyon v. Burke County, 285 F. Supp. 2d 1310, 1328 (S.D. Ga. 2003) (dismissing claim against police

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims against Defendants CCDC Medical Department, the Medical Staff, and Nurse Warrent be **DISMISSED** because Plaintiff has failed to state a claim upon which relief can be granted.[3]

SO REPORTED and RECOMMENDED this 16th day of January, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

department, reasoning it was not legal entity subject to suit).

[3] In a simultaneously filed Order, the Court has directed that process shall issue as to Defendants Dr. Andrews and Nurse Ann.